UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ASSOCIATED PRODUCE, INC.,

                Plaintiff,                                     **REPORT AND RECOMMENDATION**

            - against -                            19 CV 5894 (ARR)(CLP)

LaSEJITA PRODUCE, INC., EMPORIUM
FRESH MARKET INC., and MANUEL PENA,

                Defendants.
----------------------------------------------------------X

**POLLAK,** Chief United States Magistrate Judge:

On October 18, 2019, plaintiff Associated Produce, Inc. ("Associated" or "plaintiff") commenced this action against defendants LaSejita Produce, Inc. ("LaSejita"), Emporium Fresh Market, Inc. ("Emporium"), and Manuel Pena (collectively, "defendants"), asserting a variety of claims flowing from defendants' alleged failure to promptly and fully pay plaintiff for wholesale quantities of produce sold and delivered by plaintiff to defendants. (Compl.[1] ¶¶ 11-17). Plaintiff seeks injunctive relief and a judgment against defendants under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499(e)(c), along with interest and attorney's fees and costs. (Id. ¶¶ 18-45).

On December 4, 2019, after defendants failed to appear, or otherwise respond to the Complaint, the Clerk of Court entered a certificate of default against all of the defendants.[2] On December 16, 2019, plaintiff moved for default judgment, and on December 19, 2019, the

---

[1] Citations to "Compl." refer to the Complaint, filed on October 18, 2019, ECF No. 1.
[2] See the Certificate of Default entered against defendants LaSejita Produce, Inc., Emporium Fresh Market, Inc., and Manuel Pena on December 4, 2019, ECF No. 10.

Honorable Allyne R. Ross referred the motion to the undersigned to issue a Report and Recommendation.

For the reasons stated herein, it is respectfully recommended that default judgment not enter at this time. Further, the Court respectfully recommends that the Complaint be dismissed for failure to state a claim upon which relief may be granted, and that plaintiff be granted leave to amend its Complaint.

FACTUAL BACKGROUND

Plaintiff Associated alleges in its Complaint that defendant LaSejita is a New York corporation with a principal place of business in Copaigue, New York. (Compl. ¶ 4). Defendant Emporium is also a New York corporation with its principal place of business in Brooklyn, New York. (Id. ¶ 5). Both LaSejita and Emporium are alleged to be purchasers of perishable agricultural commodities in excess of 2,000 pounds on any given day or the aggregate of $230,000.00 annually, making them subject to the provisions of PACA. (Id. ¶ 6). Plaintiff alleges that LaSejita and Emporium are alter egos of one another and that defendant Manuel Pena is principal officer, director, and shareholder of both corporate entities, who controlled their operations and made the decisions as to what payments of invoice amounts would be made to PACA beneficiaries, including plaintiff.[3] (Id. ¶¶ 7-9).

Plaintiff alleges that between May 15, 2019 and June 3, 2019, Associated sold and

---

[3] The Court notes that the Complaint fails to contain any allegations about the plaintiff, such as allegations as to plaintiff's domicile or principal place of business. Indeed, although the pleadings allege that plaintiff sold and delivered produce to the defendants, there are no specific allegations in the Complaint that plaintiff is a supplier or seller of perishable agricultural commodities subject to PACA. (See discussion infra at 11 regarding other deficiencies in the pleadings).

2

delivered to LaSejita wholesale quantities of produce in the principal amount of $5,489.75.  (Id. ¶ 11; see also Soyfer Decl.[4] ¶ 3, Ex. C).  Of the total amount due, LaSejita paid only $2,500, leaving a balance of $2,989.75.  (Id.)

The Complaint further alleges that between May 13, 2019 and July 31, 2019, plaintiff sold and delivered to defendant Emporium wholesale quantities of produce in the principal amount of $19,644.45.  (Compl. ¶ 12; Soyfer Decl. ¶ 3, Ex. C).  Of the total amount owed, plaintiff claims that defendants paid only $1,000, leaving a balance owed of $18,644.45.  (Id.)

Plaintiff alleges that a PACA trust was created, "[a]t the time of receipt of the produce, [where] the plaintiff, Associated, became a beneficiary of a statutory trust designed to assure payment to produce suppliers."  (Compl. ¶ 15).  This trust consists of "all produce and produce-related assets, including all funds commingled with funds from other sources and all assets procured by such funds, in the possession or control of the defendants since the creation of the trust."  (Id.)

Plaintiff asserts that it has preserved its interest in the PACA trust by including the necessary statutory language on the invoices it delivered to defendants with the produce.  (Id. ¶ 16; Soyfer Decl. ¶ 6, Ex. C).  According to the Complaint, defendants have allegedly neglected to pay for the balance owed for the sales of the produce, and currently owe plaintiff the amounts of $2,989.75 and $18.644.45, plus interest at the rate of 1.5% per month as set forth on the invoices, as well as the costs of collection, including attorneys' fees equal to 25% of the amount due, or $5,408.55.  (Compl. ¶ 14; Soyfer Decl. ¶¶ 8, 9).  Plaintiff asserts that defendants' "failure, refusal, and/or inability to pay the plaintiff, Associated, indicates that defendants are

---

[4] Citations to "Soyfer Decl." refer to the Declaration of Dimitri Soyfer in Support of Plaintiff's Motion for a Default Judgment, dated December 12, 2019, ECF No. 12-1.

failing to maintain PACA assets in the statutory trust freely available to pay the plaintiff and are dissipating trust assets." (Compl. ¶ 17).

Plaintiff asserts seven causes of action in the Complaint:  1) the First Cause of Action seeks injunctive relief against defendants LaSejita and Pena, enjoining them from dissipating trust assets and requiring them to pay any and all trust assets to plaintiff; 2) the Second Cause of Action seeks similar injunctive relief against defendants Emporium and Pena; 3) the Third and Fourth Causes of Action are against defendants LaSejita and Emporium, respectively, for their failure to pay for the produce received; 4) the Fifth Cause of Action is brought against defendant Pena, accusing him of engaging in the unlawful dissipation of trust assets by a corporate official; 5) and the Sixth and Seventh Causes of Action are against LaSejita and Emporium, respectively, for goods sold and delivered. (Compl. ¶¶ 18-45).

PROCEDURAL BACKGROUND

On October 18, 2019, plaintiff filed the Complaint in this action seeking to recover the principal amount of $21,634.20 plus interest and collection costs for defendants' breach of the trust provisions under PACA, 7 U.S.C. § 499(e)(c). (Compl. ¶¶ 10-12; Soyfer Decl. ¶¶ 3, 5-6). The Summons and Complaint were served on defendants Pena and LaSejita on October 28, 2019, by personal service at LaSejita's principal place of business, 1550 Great Neck Road, Copaigue, New York, 11726. (Soyfer Decl. ¶ 5, Ex. B; see also Compl. ¶ 4). On November 1, 2019, defendant Emporium was personally served by delivery of a copy of the pleadings to 409 Fifth Avenue, Brooklyn, New York, 11215, Emporium's principal place of business. (Soyfer Decl. ¶ 5, Ex. B; see also Compl. ¶ 5).

When the defendants failed to appear or file an Answer, the Clerk of Court entered a

4

default on December 4, 2019, and plaintiff thereafter filed the instant motion for default judgment against all defendants on December 16, 2019. (Soyfer Decl. ¶ 4 (citing Ex. D)). As of the date of this Report and Recommendation, defendants have not appeared in this action nor have they opposed this motion, despite being served with the motion and supporting documents on October 28, 2019, and November 1, 2019. (See Docket Nos. 6, 7, 8).

## DISCUSSION

I. Default Judgment

    A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id.; FED R. CIV. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See FED. R. CIV. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford]

5

litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see FED. R. CIV. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, the plaintiff must first establish the defendants' liability as a matter of law, since a defaulting defendant is not considered to have admitted to any legal conclusions. Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish the defendants' liability on each cause of action asserted. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). In doing so, however, the Court draws all "reasonable inferences from the evidence offered" in plaintiff's favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

B.  Default Determination

1)  Defendants' Liability Under PACA

Section 499(e)(a) of PACA states that "any commission merchant, dealer, or broker [who] violates any provision of section 499b of this title . . . shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e. Section 499(e)(c)(1) is "intended to remedy . . . [the] burden on commerce in perishable agricultural commodities" resulting from:

> financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on

7

> inventories of food or other products derived from such
> commodities, and any receivables or proceeds from the sale of
> such commodities or products[.]

Id.  Under the statute, these arrangements are regulated by requiring:

> [p]erishable agricultural commodities received by a commission
> merchant, dealer, or broker in all transactions, and all inventories
> of food or other products derived from perishable agricultural
> commodities, and any receivables or proceeds from the sale of
> such commodities or products, . . . [to] be held by such
> commission merchant, dealer, or broker in trust for the benefit of
> all unpaid suppliers or sellers of such commodities or agents
> involved in the transaction, until full payment of the sums owing in
> connection with such transactions has been received by such
> unpaid suppliers, sellers, or agents.

Id. § 499(e)(c)(2).  A "licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust."  Id. § 499(e)(c)(4).

The Second Circuit has determined that "the legislative history and the text of . . . [PACA,] as well as implementing regulations[,] . . . make clear that trust assets are intended exclusively to benefit produce suppliers."  R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 242 (2d Cir. 2006) (citing American Banana Co. v. Republic Nat. Bank of New York, N.A., 362 F.3d 33, 38 (2d Cir. 2004) (holding that the implementation of § 499(e) "afforded [sellers] a highly unusual trust beneficiary status that permitted them, in the case of defaults, to trump the buyers' other creditors, including secured ones")).  "[T]he trust is formed at the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full."  Ger-Nis Int'l, LLC v. FJB, Inc., No. 07 CV 898, 2007 WL 656851, at *1 (S.D.N.Y. Mar. 1, 2007) (citing In re Kornblum & Co., 81 F.3d 280, 286 (2d Cir. 1996)).  Therefore, the "buyer . . . 'has a fiduciary obligation under PACA to repay the full amount of the debt owed to the PACA beneficiary.'"  Id. (quoting C.H. Robinson Co. v. Alanco Corp., 239 F.3d 483, 488 (2d

Cir. 2001)).

To recover the proceeds from a PACA-created trust, a plaintiff must demonstrate "five elements." Maspeth Trading, Inc. v. Ou Jiang Supermarket, Inc., No. 12 CV 1997, 2014 WL 3548507, at *4 (E.D.N.Y. July 17, 2014); see also Double Green Produce, Inc. v. Forum Supermarket Inc., 387 F. Supp. 3d 260, 267 (E.D.N.Y. 2019) (citations omitted); A & J Produce Corp. v. Harvest Produce Corp., No. 17 CV 7239, 2017 WL 3668995, at *3 (S.D.N.Y. August 24, 2017) (citations omitted).  First, a plaintiff must have sold defendant "perishable agricultural commodities[.]"  Maspeth Trading v. Ou Jian Supermarket, Inc., 2014 WL 3548507, at *4 (quoting A & J Produce Corp. v. Chant, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005)) (other citations omitted).  Second, plaintiff must show that the "purchaser of the perishable agricultural commodities," the defendant, was a "commission merchant, dealer, or broker," pursuant to Section 499(a) of PACA.  Id.  Under the statute, the term "dealer" means "any person engaged in the business of buying or selling in wholesale . . . , any perishable agricultural commodity in interstate or foreign commerce."  Id. (quoting 7 U.S.C. § 499(a)(b)(6)).  "Third, the transaction [must have] occurred in interstate commerce."  Id. (quoting A & J Produce Corp. v. Chant, 385 F. Supp. 2d at 358).  Fourth, the seller of the perishable agricultural commodities has not "received full payment [from defendants]" on the transaction.  Id.  Finally, the seller must have preserved its interest in the PACA trust "by giving written notice."  Id.; Nathel & Nathel v. Carlos Produce, No. 08 CV 4880, 2009 WL 3297799, at *2 (E.D.N.Y. Oct. 9, 2009).

As to the third requirement, that the transaction must occur in interstate commerce, PACA defines "interstate or foreign commerce" as "commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the

9

District of Columbia." 7 U.S.C. § 499a(3). Courts have interpreted the term "interstate commerce" broadly. Double Green Produce, Inc. v. Forum Supermarket Inc., 387 F. Supp. 3d at 269 (citing cases); Fishgold v. OnBank & Trust Co., 43 F. Supp. 2d 346, 349 (W.D.N.Y. 1999) (holding that the definition of interstate commerce under PACA "is essentially consistent with the broad definitions of interstate commerce developed by the Supreme Court") (citation omitted). The court in Double Green Produce, ruling on a motion for default judgment and accepting the plaintiff's factual allegations as true and drawing all reasonable inferences in plaintiff's favor, found that plaintiff's assertion that "the goods [plaintiff] sold to [defendant] 'had been shipped or moved in interstate commerce'" was sufficient to established that the transactions had occurred in interstate commerce under PACA. Double Green Produce, Inc. v. Forum Supermarket Inc., 387 F. Supp. 3d at 269 (citing A & J Produce Corp., 2017 WL 3668995, at *3 ("finding the plaintiff's allegations that it was 'engaged in the business of buying and selling wholesale quantities of produce in interstate commerce,' and that the defendant 'engaged in the business of buying and selling wholesale quantities of produce in interstate commerce,' sufficient to show that the transactions occurred in interstate or foreign commerce")).

    2) <u>Analysis</u>

Here, it is beyond dispute that defendants LaSejita, Emporium, and Pena are all in default. None of the defendants has filed an answer, nor has any defendant participated in this action despite proper service of the Complaint. Moreover, none of the defendants has responded to either plaintiff's motion for default judgment or the Orders from this Court. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default

10

is crystal clear – it does not even oppose this motion"). Thus, plaintiff's evidence on relief and damages with respect to defendants is uncontroverted.

However, the plaintiff still has the burden to demonstrate that the uncontroverted facts establish the defendants' liability on each cause of action asserted. While the Court accepts all well-pleaded allegations in the Complaint as true, the pleadings fail to allege all of the five elements required in order to bring a claim under PACA. See Maspeth Trading, Inc. v. Ou Jiang Supermarket, Inc., 2014 WL 3548507, at *4. Based upon a review of the allegations in the Complaint, the Court finds that plaintiff has not sufficiently established liability to warrant entry of a default judgment for damages at this time. Plaintiff has made no allegations as to plaintiff's domicile or principal place of business, and does not even allege explicitly that it is a seller or supplier of perishable agricultural commodities. More important, the Complaint fails to allege that the produce sold traveled in or moved in interstate commerce or that the transactions involved interstate commerce in any way.[5] While the bar to establish this element of interstate commerce is low and the interstate commerce requirement has been interpreted broadly, in the instant case, plaintiffs have made no allegations whatsoever regarding interstate commerce on which the Court could rely in making the determination that PACA applies. See Maspeth Trading v. Ou Jian Supermarket, Inc., 2014 WL 3548507, at *4. As plaintiff has not properly established that it is subject to PACA, the Court cannot recommend that a default judgment enter at this time. Double Green Produce, Inc. v. Forum Supermarket Inc., No. 18 CV 2660, 2019 WL 1387538, at *3 (E.D.N.Y. Jan. 29, 2019) (citing Winn v. Ballet Makers, Inc., No. 87 CV 7286, 1996 WL 325610, at *1 (S.D.N.Y. June 12, 1996) (concluding "[b]ecause there are serious

---

[5] Indeed, the words "interstate commerce" do not appear anywhere in plaintiff's Complaint. See Compl.

questions regarding . . . liability in this action, it would be inappropriate to enter a default judgment")).

Accordingly, the Court respectfully recommends that default judgment not enter at this time. Further, as the only cause of action upon which plaintiff seeks relief is under PACA, the Court respectfully recommends that the Complaint be dismissed for failure to state a claim upon which relief may be granted, but that plaintiff be granted leave to amend its Complaint to cure the deficiencies in the pleadings and adequately state a claim.

CONCLUSION

In summary, the Court respectfully recommends that plaintiff's motion for default judgment be denied, that plaintiff's Complaint be dismissed, but that plaintiff be granted leave to amend its Complaint.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
April 17, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York